IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANIEL L. S.,[1]                         )
                                       )
           Plaintiff,          )
                                         )
vs.                               )   Case No. 18-cv-1035-CJP[2]
                                       )
COMMISSIONER of SOCIAL        )
SECURITY,                    )
                                       )
           Defendant.      )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for DIB in December 2013, alleging disability as of May 1, 2013. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Lisa Leslie denied the application on March 15, 2017. (Tr. 15-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 11.

complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

> The ALJ did not adhere to SSR 96-8p when she glossed over and ignored evidence in her residual functional capacity (RFC) determination for claimant.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Leslie followed the five-step analytical framework described above. She

determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.

The ALJ found that plaintiff had the severe impairment of Bipolar Disorder.

The ALJ found that plaintiff had the RFC to perform work at all exertional levels with some mental limitations.   Specifically, the ALJ stated that plaintiff was "limited to performing simple, routine tasks not at a fast pace such as an assembly line, and can only occasionally interact with coworkers and the public."   (Tr. 19). Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff was not able to do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

### 1.    Agency Forms

Plaintiff was born in 1973 and was almost 40 years old on the alleged onset date.   (Tr. 57).   He previously worked as a fast food crew member/manager, mounter, and laborer.   (Tr. 65, 176).   Plaintiff submitted a function report in April 2014 stating that he lived alone in an apartment and had a dog that he cared for.   He claimed he had difficulty dressing, grooming, completing tasks, concentrating, understanding, following instructions, and getting along with others.

(Tr. 195-196). He reported cooking simple meals and relying on his mother to complete household chores. (Tr. 197-198).

Plaintiff's sister submitted a third party function report in April 2014 in which she claimed plaintiff had problems with authority. (Tr. 211). Plaintiff's sister further stated that plaintiff had difficulty tolerating his neighbors and "wants to kill them." She also said that plaintiff had threatened to kill his bosses, hurt other coworkers, had paranoia, and did not trust people. (Tr. 212). Plaintiff's sister additionally reported that plaintiff was on probation, although she did not clearly state what for. (Tr. 212, 213).

### 2. Evidentiary Hearing

At the evidentiary hearing, plaintiff reported previously working at the Belleville News-Democrat newspaper. Plaintiff was fired from that job after he threatened his boss. Plaintiff stated that, according to the police, his boss then filed a restraining order on him. (Tr. 38).

Plaintiff said before that, he worked on the assembly line at Empire Stove. Plaintiff said that he was also fired from that job. When asked why, plaintiff claimed that he missed too many days of work and had anger problems directed towards his boss and other coworkers. Plaintiff also stated that he punched "one of the units and it came back at me. I was throwing my tools around, my air gun I broke a couple of those." (Tr. 39-40). Plaintiff reported that he got in fights at both places of employment. (Tr. 45). Additionally, plaintiff claimed that he was previously convicted of eluding police and was sentenced to probation. Plaintiff

said that while on probation, his probation officer required him to see a psychiatrist. (Tr. 40).

### 3. Medical Records

Plaintiff saw Dr. Christopher Johnson, a psychiatrist, from 2011 to at least 2015. (Tr. 292, 313, 345). In 2013, Dr. Johnson noted problems with plaintiff's mood, racing thoughts, irritability, aggression, and violence. He reported that plaintiff was still getting into a lot of fights and recently lost his job for threatening his boss. Plaintiff told Dr. Johnson that his firearm card was taken away due to some things that happened. Plaintiff also told Dr. Johnson that he drank sometimes, especially on the weekends, and that some of the incidents he was involved in occurred due to increased anger from intoxication. (Tr. 272). Later in 2011, Dr. Johnson observed improvement in plaintiff, stating that plaintiff relayed that he was getting into fewer altercations with people and abstaining from alcohol. However, Dr. Johnson also remarked that plaintiff reported isolating himself socially to avoid conflict. Plaintiff's sister also attended one of plaintiff's appointments, where she became forceful about Dr. Johnson's support for plaintiff's disability claim. She became belligerent and Dr. Johnson eventually asked her to leave the office. (Tr. 266, 264).

In 2014, Dr. Johnson noted some violent incidents involving plaintiff. Plaintiff told him that he got into an argument with his girlfriend and pushed her into a wall. He also reported hitting his neighbor's head into a wall. Plaintiff further stated that alcohol was not involved in either incident and continued to

report abstinence from alcohol throughout the year. (Tr. 262, 293, 296). Plaintiff also continued to mention that he was socially isolating himself to avoid confrontation. (Tr. 294, 295, 297, 298). Dr. Johnson completed a mental capacity questionnaire later that year. Although he stated that plaintiff was able to perform simple repetitive tasks, Dr. Johnson opined that plaintiff did not have the capacity to perform any work for 8 hours per day. He additionally observed that plaintiff had "severe anger problems and a tendency to become violent which has limited his ability to work especially around others or with supervisors." He further stated plaintiff "would likely be unable to work full time without serious anger outbursts or violence." (Tr. 292).

In May 2014, acting as a state agency consultant, Dr. Howard Tin assessed plaintiff's mental RFC based on a review of the file contents. Dr. Tin stated that there was no evidence of any significant limitation for any social interaction category regarding plaintiff except for a moderate limitation in his ability to interact appropriately with the public. Dr. Tin found that plaintiff was not disabled and had no exertional limitations. (Tr. 65). In June 2015, acting as a state agency consultant, Dr. Donald Henson also assessed plaintiff's mental RFC based on a review of the file contents and concurred with Dr. Tin's assessment. (Tr. 77).

In 2015, Dr. Johnson completed a mental RFC assessment. He rated plaintiff markedly limited in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Under the social interaction section, he rated plaintiff markedly limited in his ability to interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers without distracting them or exhibiting behavioral extremes. He also rated plaintiff moderately limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 312).

## Analysis

Plaintiff argues that ALJ Leslie improperly evaluated him in her RFC assessment. The determination of a plaintiff's RFC is a matter for the ALJ alone. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). However, an RFC determination "must be based on *all* of the relevant evidence in the case record." SSR 96–8p, 1996 WL 374184 (July 2, 1996) (emphasis in original). This includes medical history, reported daily activities, recorded observations, need for a structured work environment, the effects of treatment, and medical opinions. *Ibid.* The ALJ must consider all limitations and restrictions resulting from plaintiff's impairments when determining the RFC, including those which are not deemed severe. *Ibid.* Furthermore, the ALJ is required to cite to specific medical or non-medical evidence when explaining his decision. *Ibid.* If the ALJ's RFC determination conflicts with a medical opinion in the record, the ALJ is required to explain why he did not adopt the position. *Ibid.* Additionally, the ALJ must explain any material inconsistencies between his RFC assessment of the plaintiff and the evidence in the record. *Ibid.*

In this case, the ALJ found that plaintiff could occasionally interact with the public. (Tr. 19). The ALJ based this determination on the mental RFC assessments of state agency consultants Dr. Tin and Dr. Henson, and in contrast to the "conclusory" June 2014 assessment of plaintiff by Dr. Johnson. And so, the crux for the ALJ became the credibility of Dr. Johnson's notes and assessments, and by extension the subjective complaints of plaintiff, versus the credibility of the consultants' assessments. The ALJ largely sided with the consultants, concluding that plaintiff was only moderately limited in social function based on their assessments. (Tr. 21-22).

In reaching his determination before discussing key pieces of evidence contradictory to that determination, the ALJ put the proverbial cart before the horse and failed to provide a logical bridge between the evidence and that determination. The record reveals that the ALJ failed to discuss or explain material inconsistencies between the RFC determination and the evidence within the record. Simply stated, alcohol or no alcohol, medication or no medication, plaintiff was understood by those with intimate knowledge to have severe anger problems that precipitated violence. Even when plaintiff was faithfully taking his medication and not drinking, he pushed his girlfriend into a wall during an argument and violently punched a neighbor's head into a wall. These confrontations happened all while he deliberately socially isolated himself in order to prevent a confrontation.

While the ALJ chose to focus on existing improvements, these incidents are

nowhere to be found in the ALJ's decision, nor are they in the Commissioner's brief. These reports bolster Dr. Johnson's opinion and assessments. Dr. Johnson noted in his first mental assessment that plaintiff had "severe anger problems and a tendency to become violent which has limited his ability to work especially around others or with supervisors." He further stated plaintiff "would likely be unable to work full time without serious anger outbursts or violence." (Tr. 292). He later listed marked limitations in plaintiff's capacity for social and work-related interactions. (Tr. 312). It also bears noting that plaintiff reported that he was convicted of eluding police, spent time on probation, and had his firearm license taken away.

The Court recognizes that ALJs are not required to address every piece of evidence, however, they still must adequately support their conclusions. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In this instance, the ALJ failed to do so by disregarding contrary evidence. See SSR 96–8p. Clearly, the ALJ's opinion painted a flawed picture of plaintiff's improving affect while, in reality, he was still a danger in any social setting, much less a work-related one.

The second point of plaintiff's argument, that the ALJ failed to properly evaluate third party evidence in the form of his sister's statement, bleeds into the first point and, on review, eventually reinforces his first contention. Generally, ALJs are in the best position to determine credibility, *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008), and if they give specific reasons that are supported by the record, their determination will stand, *Minnick v. Colvin*, 775 F.3d 929, 936 (7th

Cir. 2015). In this case, though, the ALJ's credibility finding for the third party statement is intertwined with the same gaps in the record and reasoning above that require remand. The ALJ noted that the sister stated that plaintiff gets in fights, is paranoid and antisocial; cannot stay on task, lacks motivation, and is easily frustrated. (Tr. 22). Despite this, the ALJ did not counter her statement in any real way. Instead, she dismissed the statement by saying plaintiff's sister had no medical expertise and was only motivated to get plaintiff his disability benefits. First off, to dismiss a plaintiff's third party subjective statement based on a lack of medical expertise, and with no discussion of other evidence in the context of her statement, is baffling. Secondly, of course the sister's motivation is to get plaintiff disability benefits. That is the whole point of submitting the statement in the first place. Her motivation, though not completely irrelevant, does not wholly touch on the credibility of her statement, or whether plaintiff does indeed have severe mental problems. She is, after all, privy to more of plaintiff's problems and incidents than most.

The lack of discussion of the subjective allegations, along with the lack of discussion of treater observations, requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

<u>**Conclusion**</u>

The Commissioner's final decision denying plaintiff's application for social

security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   March 19, 2019.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**